COMMONWEALTH vs. HENRY P. ARSENAULT, JR.

Middlesex.    October 4, 1971. — March 2, 1972.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Practice, Criminal,* Double jeopardy, New trial, Capital case. *Constitutional Law,* Double jeopardy. *Homicide. Evidence,* Admissions and confessions, Corroborative evidence, Impeachment of witness. *Witness,* Impeachment.

A commutation of a sentence does not remove the conviction but merely remits a portion of the sentence leaving the conviction undisturbed. [291-292]

The rule of *Price* v. *Georgia,* 398 U. S. 323, that a guilty verdict of a lesser included offence implies an acquittal of the greater offence and bars the State under the double jeopardy clause of the United States Constitution from retrying the defendant for the greater offence at a second trial, only applies to cases where there is an implied or express judicial determination of acquittal of the greater offence at the first trial and does not apply where there is an act of executive clemency which merely reduces the sentence imposed after conviction of the greater offence at the first trial and does not operate as an acquittal of the greater offence. [290-292]

Where a defendant was tried and convicted by a jury of first degree murder with no recommendation by the jury that the death sentence not be imposed and thereupon he was sentenced to death, and following a commutation of his sentence to life imprisonment by the Governor, his conviction was reversed by the United States Supreme Court and he was retried and found guilty of murder in the first degree a second time, a refusal by the judge at the second trial to instruct the jury that if they found him guilty of murder in the first degree they must also recommend that the death sentence not be imposed, did not subject him to double jeopardy. [292-297]

There was no merit in a contention that G. L. c. 265, § 2, establishes two different crimes of murder in the first degree, the greater being that punishable by death, and the lesser being that punishable by life imprisonment upon a recommendation by the jury that the death penalty not be imposed. [296-297]

The trial of a criminal case by the Commonwealth on one theory does not constitute an admission by it precluding it from retrying the case on a different theory, and it was not error for the trial judge at a second trial to exclude an offer by the defendant to prove the prosecutor's opening statement and argument at the first trial to show that the prosecution was advancing a different theory concerning the defendant's role in the crime at the second trial. [297-298]

Evidence of a confession, made out of court by a third person, of the commission of a crime with which a defendant on trial is charged, is inadmissible at that trial. [298-299]

There was no abuse of discretion by the judge at a criminal trial in excluding evidence offered by the defendant merely in a corroboration of testimony previously given by him on cross-examination. [299]

Where the defendant at a second trial of a criminal case called a codefendant at the first trial as a witness, the defendant assumed the risk that his conviction at the first trial might be revealed to the jury. [299-301]

Where the defendant at a second trial of a murder case called as a witness a codefendant at the first trial, who testified favorably to the defendant, a question to the witness in cross-examination as to where he had resided since the time of the crime and answers to the effect that he had been in prison and had met and talked with the defendant there did not constitute an improper method of impeaching the witness as not in accordance with G. L. c. 233, § 21, but were permissible to show bias or interest on his part. [301]

INDICTMENT found and returned in the Superior Court on February 9, 1955.

A second trial of the case was before *Leen, J.*

*William P. Homans* (*Thomas G. Shapiro* with him) for the defendant.

*Terence M. Troyer*, Assistant District Attorney, for the Commonwealth.

QUIRICO, J. This is an appeal under the provisions of G. L. c. 278, §§ 33A–33G, from the defendant's second conviction of murder in the first degree after reversal of his earlier conviction. A brief summary of the prior proceedings in this case will be helpful in understanding some of the issues raised by the present appeal. On February 9, 1955, the defendant, along with two other persons, was indicted for first degree murder. In June, 1955, he was tried and convicted of murder in the first degree with no recommendation by the jury that the death sentence not be imposed and thereupon he was sentenced to death. G. L. c. 265, § 2, as amended through St. 1951, c. 203. That conviction was affirmed by this court on March 20, 1957, in *Commonwealth* v. *Devlin*, 335 Mass. 555. On December 3, 1957, the Governor, acting by and

with the advice of the Council, commuted the sentence to life imprisonment. Part II, c. 2, § 1, art. 8, of the Constitution of the Commonwealth.

In 1966, the defendant sought a writ of error claiming that the intervening decision of the United States Supreme Court in *White* v. *Maryland,* 373 U. S. 59, applied retroactively and voided his conviction. On February 2, 1968, this court held that *White* v. *Maryland, supra,* did not apply retroactively and accordingly the defendant's conviction was affirmed . *Arsenault* v. *Commonwealth,* 353 Mass. 575. That decision was reversed by the United States Supreme Court on October 14, 1968, in *Arsenault* v. *Massachusetts,* 393 U. S. 5. The defendant was tried a second time in February, 1970. The jury again found him guilty of murder in the first degree, but this time they recommended that the death sentence be not imposed. G. L. c. 265, § 2, as amended.

Before the jury were impanelled for the second trial, the defendant moved "for an order directing the jury, in the event of a verdict of [guilty of] murder in the first degree, to include in its verdict as a part thereto, its recommendation that the sentence of death be not imposed." The trial judge denied this motion. In impanelling the jury the judge interrogated each prospective juror as to whether he had any opinion that would prevent or preclude him or her from finding the defendant guilty of a crime punishable by death, and he excused a number of prospective jurors because of their opinions on this issue. At the close of the evidence the defendant requested the judge to instruct the jury that if they returned a verdict of guilty of murder in the first degree, they must also recommend that the sentence of death be not imposed. The judge refused to give such an instruction. The defendant duly excepted to the denial of his motion and request for instruction on this subject. The judge submitted the case to the jury with instructions that they were permitted, but not required, to recommend that the sentence of death be not imposed. As noted above they did so recommend.

The defendant contends that because of the Governor's commutation of his death sentence after the first trial, he could not lawfully be subjected a second time to the possibility of a death sentence. Relying on the recent decision of the United States Supreme Court in *Price* v. *Georgia*, 398 U. S. 323, he contends that the trial judge's denial of his pre-trial motion and refusal to instruct the jury as requested by him subjected him to double jeopardy in violation of the Fifth Amendment to the Constitution of the United States.[1]

In *Price* v. *Georgia, supra,* the defendant was tried for murder and found guilty of the lesser included crime of voluntary manslaughter. Upon reversal of that conviction he was once again tried for murder. The court held that this procedure subjected the defendant to double jeopardy, reasoning that the verdict of guilty of voluntary manslaughter, returned in Price's first trial, constituted an implied acquittal on the "greater charge" of murder. 398 U. S. at 329.

It is worth noting at this point that the decision of *Price* v. *Georgia, supra,* decided in 1970, added nothing to the law of this Commonwealth, since the court had reached the same conclusion in *Commonwealth* v. *Burke*, 342 Mass. 144, decided in 1961. In that case the defendant was first tried on an indictment charging the crime of murder in the second degree and was found guilty of manslaughter. We reversed this conviction in 339 Mass. 521, and before he was tried a second time the trial judge reported for our decision the question whether the defendant should be tried on the full indictment charging murder in the second degree, or only on so much of the

---

[1] Further relying on *Price* v. *Georgia*, p. 331, the defendant argues that this alleged error by the judge cannot be harmless because his wrongful exposure to the death penalty may have influenced the jury in finding him guilty with a recommendation against the death penalty, rather than to continue to debate a verdict of guilty of a lesser included offence or to continue to debate his innocence. See *United States ex rel. Hetenyi* v. *Wilkins*, 348 F. 2d 844 (2d Cir.), cert. den. sub nom. *Mancusi* v. *Hetenyi*, 383 U. S. 913. We do not reach this question because of our ultimate conclusion that the defendant was not wrongfully subjected to the possibility of a death sentence at his second trial.

indictment as charged manslaughter. We held that the second trial should be limited to the charge of manslaughter on substantially the same reasoning used in the later decision in *Price* v. *Georgia, supra.*[2]

It is obvious from our brief statement of the holdings in the *Price* and *Burke* cases that they arose from a factual background materially different from that in the case now before us. In both the *Price* and the *Burke* cases there were prior judicial determinations, implied or expressed, that the defendants were not guilty of the greater crime charged in the indictments. Each case held that the reversal of the defendant's conviction of the lesser crime included in the same indictment entitled him to a new trial on the charge of that lesser crime, but left undisturbed the prior acquittal of the greater crime. In the present case all we have by way of prior judicial action is the defendant's conviction for the highest crime charged in the indictment, viz., murder in the first degree. The jury in the first trial, although permitted to do so, did not make a recommendation that the death penalty be not imposed on the defendant. The reduction in penalty from a sentence of death to life imprisonment was not the result of any judicial action, but rather resulted from intervention by the Governor after the conviction and death sentence had been upheld by this court.

Although it has sometimes been said that the Governor's power to commute sentences is derived from his "power of pardoning offences" contained in Part II, c. 2, § 1, art. 8, of the Constitution of the Commonwealth (*Opinion of the Justices,* 190 Mass. 616, 621; *Opinion of the Justices,* 210 Mass. 609, 610–611; 4 Op. Atty. Gen. 119, 120–121; 8 Op. Atty. Gen. 6), a commutation is not the same as a pardon. *Perkins* v. *Stevens,* 24 Pick. 277, 280. "A commutation of sentence . . . is the substitution

---

[2] Our decision was based on the double jeopardy provision of the Fifth Amendment to the United States Constitution, and upon G. L. c. 263, §§ 7 and 8, relating to prior acquittals. Our decision in the *Burke* case did not turn on the fact that at the original trial the jury expressly reported that they found the defendant not guilty of murder in the second degree and guilty of manslaughter.

of a lighter for a more severe punishment . . . ." *Opinion of the Justices*, 210 Mass. 609, 611. "The commutation of the sentence did not do away with the conviction. . . . The effect of the commutation was simply to remit a portion of the sentence. The conviction remained undisturbed by the commutation . . . ." *Rittenberg* v. *Smith*, 214 Mass. 343, 347.[3] We do not agree with the defendant's contention that the Governor's commutation of his original sentence from death to life imprisonment operated to put him "in the same position as if he had received a sentence of life imprisonment by a verdict of the jury or judgment of the court." We conclude that the act of executive clemency which reduced the sentence imposed on the defendant after his first trial did not operate as an acquittal of so much of the crime charged against him which required or permitted the imposition of the death penalty. For this reason we hold that there was no error by the judge in refusing either to direct or instruct the jury that if they found the defendant guilty of murder in the first degree they were required to recommend that the death sentence be not imposed.

The defendant concedes that his case differs from the *Price* case in that he was convicted of the same crime, viz., murder in the first degree, at each of his trials, whereas Price, although charged with murder at his first trial, was convicted only of manslaughter, which implied his acquittal on the charge of murder. Despite these admitted differences, the defendant sought to profit from the *Price* decision by the ingenious argument that under G. L. c. 265, § 2, as amended through St. 1951, c. 203, we now have two different crimes of murder in the first

---

[3] *Ex parte Garland*, 4 Wall. 333, 380, contains the following statement frequently quoted or cited in other opinions: "A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence." This statement was disputed by a dissent in the same case, and has been disputed by others. See Williston, "Does a Pardon Blot out Guilt?" 28 Harv.L.Rev. 647, 651, and Lattin, "The Pardoning Power in Massachusetts," 11 B. U. L. Rev. 505, 519–522.

degree, the greater being that punishable by death, and the lesser being that punishable by life imprisonment. Since we have already held that the Governor's commutation of the defendant's death sentence was not equivalent to a jury recommendation that the death penalty be not imposed, it may not be necessary for us to address ourselves to this second aspect of the defendant's argument. However, since the subject of the legal effect of such a jury recommendation has been fully argued, we shall treat with it as an alternate ground for rejecting the defendant's claim of double jeopardy.

General Laws, c. 265, § 2, recognizes only one crime identifiable as murder in the first degree, and it specifies that the penalty for that crime is death unless the jury recommends that the death sentence be not imposed. In the latter event, it specifies a punishment of life imprisonment. It is clear under our decisions that the jury must first decide whether the defendant charged with murder in the first degree is guilty or not guilty of that crime. If the jury decide that he is guilty, they then consider a second question, viz., whether they shall recommend that the death penalty be not imposed. *Commonwealth* v. *McNeil,* 328 Mass. 436, 441–442. *Commonwealth* v. *Stewart,* 359 Mass. 671, 676–677. If they make such a recommendation, it mitigates the punishment but does not change the crime of which they have found the defendant guilty.

A most persuasive case supporting our conclusion is that of *Stroud* v. *United States,* 251 U. S. 15, decided under Federal statutes which at that time were markedly similar to our present G. L. c. 265, § 2, in that they required imposition of the death penalty upon conviction of first degree murder, 35 Stat. 1143, unless the jury qualified their verdict by adding thereto "without capital punishment," in which case a sentence of life imprisonment was imposed. 35 Stat. 1152. At his first trial Stroud was convicted of first degree murder without a recommendation of clemency by the jury, and he was sentenced to death. This conviction was reversed, and at his second

trial he was again convicted of first degree murder, but this time the jury included in their verdict the recommendation "without capital punishment," and he was sentenced to life imprisonment. This conviction was also reversed, and Stroud was tried a third time. Again he was found guilty of first degree murder but, as in the first trial, the jury *refused* to recommend clemency and he was again sentenced to death. In affirming the third conviction, the United States Supreme Court employed the following reasoning (at pp. 17–18), which is equally applicable to the case at bar: "It is alleged that the last trial of the case had the effect to put the plaintiff in error twice in jeopardy for the same offense in violation of the Fifth Amendment to the Constitution of the United States. . . . [T]he indictment was for murder in the first degree; a single count thereof fully described that offense. Each conviction was for the offense charged. It is true that upon the second trial the jury added 'without capital punishment' to its verdict, and sentence of life imprisonment was imposed. . . . The fact that the jury may thus mitigate the punishment to imprisonment for life did not render the conviction less than one for first degree murder. *Fitzpatrick* v. *United States*, 178 U. S. 304, 307."

The recent decision in *North Carolina* v. *Pearce*, 395 U. S. 711, reaffirmed the *Stroud* decision when the court said (at pp. 720–721): "And at least since 1919, when *Stroud* v. *United States*, 251 U. S. 15, was decided, it has been settled that a corollary of the power to retry a defendant is the power, upon the defendant's reconviction, to impose whatever sentence may be legally authorized, whether or not it is greater than the sentence imposed after the first conviction. . . ."[4] [T]he rationale for this

---

[4] "In *Stroud* the defendant was convicted of first-degree murder and sentenced to life imprisonment. After reversal of this conviction, the defendant was retried, reconvicted of the same offense, and sentenced to death. This Court upheld the conviction against the defendant's claim that his constitutional right not to be twice put in jeopardy had been violated. . . . The court's decision in *Green* v. *United States*, 355 U. S. 184, is of no applicability to the present problem. The *Green*

'well-established part of our constitutional jurisprudence'
. . . rests ultimately upon the premise that the original
conviction has, at the defendant's behest, been wholly
nullified and the slate wiped clean. . . . The conviction
*has* been set aside, and the unexpired portion of the
original sentence will never be served. A new trial may
result in an acquittal. But if it does result in a convic-
tion, we cannot say that the constitutional guarantee
against double jeopardy of its own weight restricts the
imposition of an otherwise lawful single punishment for
the offense in question."

The *Stroud* decision was cited with approval by this
court in *Makarewicz* v. *Commonwealth*, 346 Mass. 478,
where the defendant, a juvenile charged with first degree
murder, was convicted of that crime with the jury recom-
mending that the death sentence be not imposed. The
defendant contended that this verdict and recommenda-
tion had the effect of establishing his offence as one not
"punishable by death" and that, accordingly, under G. L.
c. 119, § 74, the Superior Court was without jurisdiction
to impose sentence upon him.[5] In rejecting this conten-
tion we said (at pp. 480–481) that "the jury's verdict
established and defined the substantive crime which
Makarewicz had committed as murder in the first degree
which is an offence punishable by death. . . . The recom-
mendation of the jury pursuant to G. L. c. 265, § 2, as
amended by St. 1951, c. 203, did not change the class to
which the substantive crime belonged. It did not lessen
the gravity of the crime or alter its essential nature. It
was limited solely to the punishment which could be im-
posed in the particular case." We then quoted from
*Fitzpatrick* v. *United States*, 178 U. S. 304, 306–307,
where the Supreme Court of the United States said, "It

decision was based upon the double jeopardy provision's guarantee
against retrial for an offense of which the defendant was *acquitted.*"
(Footnote by the court at 395 U. S. 711, 720, n. 16)

[5] General Laws c. 119, § 74, provided at that time: "Criminal pro-
ceedings shall not be begun against any child between fourteen and
seventeen years of age, except for offences punishable by death . . . ."
See St. 1948, c. 310, § 12.

is clear, however, that, as . . . [the statute] inflicts the penalty of death for murder, the power given the jury by the . . . [amendment] to qualify the verdict of guilty by adding the words 'without capital punishment,' does not make the crime of murder anything less than a capital offence, or a conviction for murder anything less than a conviction for a capital crime, by reason of the fact that the punishment actually imposed is imprisonment for life. The test is not the punishment which *is* imposed, but that which *may be* imposed under the statute. . . . A conviction for murder, punishable with death, is not the less a conviction for a capital crime by reason of the fact that the jury, in a particular case, qualifies the punishment."

The defendant has called our attention to the case of *People* v. *Henderson,* 60 Cal. 2d 482, decided in 1963, in which the California Supreme Court declined to follow the *Stroud* case because its rationale had been "vitiated." [6] We now have the benefit of the 1969 decision of the United States Supreme Court in *North Carolina* v. *Pearce, supra,* which, of course, the California court did not have. We have concluded from language quoted above from the *Pearce* decision that it reaffirmed, rather than vitiated, the rationale of the *Stroud* case. Accordingly, we decline to follow the *Henderson* case.

For the foregoing reasons, the defendant's argument based on the assumption that in this Commonwealth we have two different crimes of murder in the first degree,

---

[6] In the *Henderson* case, the court said (at p. 497) that "[w]hen *Stroud* v. *United States* . . . [was] decided, it had been held by the United States Supreme Court . . . that a reversed conviction of a lesser degree of a crime did not preclude conviction of the higher degree on retrial. (*Trono* v. *United States,* 199 U. S. 521, 533–534 . . . .) A fortiori that rule would apply to different punishments for the same crime. Since the *Green* [*Green* v. *United States,* 355 U. S. 184] and *Gomez* [*Gomez* v. *Superior Court,* 50 Cal. 2d 640] cases have now established that a reversed conviction of a lesser degree of a crime precludes conviction of a higher degree on retrial, the rationale of . . . *Stroud* . . . has been vitiated." Proceeding upon this view of the effect of *Green* v. *United States, supra,* the court in the *Henderson* case reversed the defendant's conviction, holding that imposition of the death penalty for first degree murder following reversal of the defendant's conviction for the same offence with punishment fixed at life imprisonment constituted double jeopardy.

the greater punishable by death and the lesser by life imprisonment, must fail. On the basis of our interpretation of State law, we hold that the defendant has not previously been acquitted of the crime of murder in the first degree, and that his second trial did not subject him to double jeopardy therefor.

The remaining assignments of error requiring our consideration relate to the admissibility of evidence offered at the trial, and we shall treat each of them separately.

1. In the defendant's first trial in June, 1955, he was tried jointly with Arthur L. Devlin and Russell P. LeBlanc. At his second trial in February, 1970, he was tried alone. The first trial proceeded on the theory that the defendant LeBlanc was the "finger man" for the robbery which resulted in the alleged murder, that he had selected the house in which the robbery would be committed and that he had brought the defendant and Devlin there for that purpose. That theory of the trial was apparent from the transcript of the opening statement and the final argument of the assistant district attorney at the first trial. The second trial proceeded on a different theory with a different assistant district attorney prosecuting. The prosecutor at the second trial said in his opening statement: "And the evidence will be . . . that Henry Arsenault looked at a house and said, 'That looks like a good place to rob. Let's rob that house.'" The prosecutor then offered testimony through a police stenographer that after his arrest Arsenault said, in answer to police questions, that on the night of the robbery they had no house in mind to rob, but were looking for one in a wealthy neighborhood, and when they reached the one eventually robbed he said: "This looks like a good house to do it in. A house like it would be worth something." The prosecutor argued this point in his final argument to the jury.

At the second trial the defendant offered to prove the prosecutor's opening statements and argument in the first trial to the effect that LeBlanc was the "finger man" who

had selected the place to rob. The judge excluded it and the defendant excepted. The defendant argues that such evidence was admissible as an admission by the Commonwealth. We do not agree. Admittedly the two trials proceeded on different theories of the defendant's part in the crimes, but the trial of a case on one theory does not, without more, constitute an admission by a party who proceeds on a different theory in a retrial of the case. This is not a case where the defendant offered to prove that a witness testified differently at the two trials. It does not appear from the record whether the police stenographer who testified at the second trial had been a witness at the first trial. The Commonwealth made no binding agreement or stipulation locking itself into the theory of its first trial. Neither had it so limited itself by any bill of particulars precluding such a shift in theories. Nothing said or done at the first trial prevented the Commonwealth from conducting the second trial on the basis of evidence then available to it or from proceeding on any theory supported by that evidence.

The cases relied on by the defendant in support of this assignment of error may permit the argument that a party trying a case on a particular theory is not entitled to have the jury consider the case on a different theory. However, that limitation does not necessarily survive the end of that particular trial. See *Commonwealth* v. *Desmond*, 5 Gray, 80; *Commonwealth* v. *Elliot*, 110 Mass. 104; *McMahon* v. *Lynn & Boston R.R.* 191 Mass. 295, 298. Some of the cases cited by the defendant relate to the survival of stipulations made in an earlier trial, and are therefore not applicable to the present case where there was no stipulation. See *Household Fuel Corp.* v. *Hamacher*, 331 Mass. 653, 657, and cases cited; *Wigmore on Evidence* (3d ed.) § 2593.

On this same general subject of the difference in the theories upon which the Commonwealth proceeded in the defendant's two trials, the defendant offered the testimony of a witness to the effect that LeBlanc, who was a codefendant at the first trial, told the witness that he had

selected the particular house to rob. There was no error in the exclusion of this evidence. "It has long been the law in this Commonwealth that evidence of a confession, made out of court by a third person, of the commission of a crime with which a defendant on trial is charged, is inadmissible." *Commonwealth* v. *Chin Kee,* 283 Mass. 248, 263. *Commonwealth* v. *Underwood,* 358 Mass. 506, 508, and n. 1.

2. The defendant offered a witness who was prepared to testify that he was present on one occasion several days prior to trial when the defendant and his counsel were preparing the case for trial and that at that time counsel refused to permit the defendant to see the transcript of the first trial. The trial judge did not err in excluding this testimony. The prosecutor had already cross-examined the defendant on whether he had seen or used this transcript before testifying, and the defendant testified that he had not. The trial judge was not then required to admit evidence that, on one isolated occasion, the defendant did not see or use the transcript. There is nothing in the record to show any abuse by the judge of his broad discretion with respect to the admission of evidence offered only in corroboration of testimony already given by the defendant. See *Commonwealth* v. *Lammi,* 310 Mass. 159, 164, and cases cited; *Palmer Russell Co.* v. *Rothenberg,* 328 Mass. 477.

3. Devlin, who was a codefendant at the first trial, was called by the defendant at the second trial, and gave testimony favorable to the defendant. Devlin testified on cross-examination that the defendant had discussed his forthcoming second trial with him, and that this new trial was very important to him (Devlin). During the testimony of the defendant and Devlin there were many questions referring to a "prior proceeding" and to the evidence presented at that proceeding. Counsel were careful not to refer to the prior proceedings directly as the first trial at which the defendant, Devlin and LeBlanc had been convicted. In cross-examining Devlin the prosecutor asked where he had been residing since February,

1955. Over the defendant's objection and exception Devlin was allowed to answer: "I have been in both Walpole State Prison and now I am in Norfolk State Prison." Thereafter Devlin made the following statements in reply to several questions put to him by the prosecutor: "I spent two years and three months on what they call death row awaiting execution. . . . Well, part of that was spent at the old Charlestown State Prison. I was transferred to Walpole State Prison, to that death row, and then I was commuted in 1957 at Walpole, and I was transferred to Norfolk State Prison until April of 1961, and I have been there since." These statements were not responsive to the questions put to Devlin, but the defendant made no motion to strike them. They remained in the case as part of the evidence for the consideration of the jury. Devlin further testified without objection or exception that he had met with and talked to the defendant at the Correctional Institution at Norfolk.

The defendant contends that this evidence "had the effect of putting before the jury the fact of the defendant's conviction at the first trial." When this evidence was admitted, the judge cautioned the jury that it was admitted "solely as bearing upon the credibility of this witness [Devlin]"; and in his final instructions to the jury he told them that the testimony "is not to be taken by you as having any connection whatsoever with the guilt or innocence of this defendant, but it has to do with the credibility of this witness." The judge also cautioned the jury against any speculation concerning matters not in evidence. Despite the best efforts of the court and counsel to refrain from expressly bringing to the attention of the jury the fact that the defendant, Devlin and LeBlanc had been convicted in the first trial, it is doubtful whether the efforts were successful. It would be unrealistic to think that the numerous references to and questions about a "prior proceeding" and to the evidence presented at that proceeding could leave the jury unaware of the fact that there had been a previous trial. By calling Devlin as his own witness the defendant

assumed the risk that the cloak of secrecy about the nature of the first trial would be pierced, and he is now in no position to complain that perhaps it was.

The defendant further contends that the testimony in question constituted an improper attempt to impeach the witness by introducing evidence of his prior conviction of a crime in a manner other than that authorized by G. L. c. 233, § 21, as amended. In making this contention, the defendant appears to misapprehend the nature and purpose of the disputed testimony. The whole purpose of proving the conviction of a witness of a crime under G. L. c. 233, § 21, is that it tends "to impeach the credit of the witness by evidence of bad character" (*Labrie* v. *Midwood*, 273 Mass. 578, 582), and the proof of such a conviction for this purpose is required to be made by means of the original or a certified copy of the court record. *Commonwealth* v. *Connolly*, 356 Mass. 617, 627, and cases cited. The Commonwealth was not limited to this means of impeaching the witness Devlin. Cf. *Wasserman* v. *Wasserman*, 351 Mass. 700. It was permitted to attempt to impeach him by any other evidence tending to prove that he was motivated by bias or interest in testifying favorably to the defendant. It was thus proper for the Commonwealth to cross-examine him in a manner to demonstrate his direct interest in the outcome of the defendant's case, his several talks with the defendant about the latter's forthcoming second trial, and the times and places where such talks occurred. The record in this case shows no abuse of the trial judge's broad discretion in permitting cross-examination relating to the bias or interest on the part of the witness. *Commonwealth* v. *Redmond*, 357 Mass. 333, 339–340. The defendant could not call Devlin as his witness and expect to receive the benefits of his favorable testimony on direct testimony and then prevent the prosecution from cross-examining him with respect to matters relating to his bias or interest.

4. Finally, the defendant assigns as error the failure of the judge to afford him the credit to which he is entitled under G. L. c. 279, § 33A, inserted by St. 1955,

c. 770, § 101, and as amended through St. 1961, c. 75. This statute requires that "[t]he court on imposing a sentence of commitment . . . shall order that the prisoner be deemed to have served a portion of said sentence, such portion to be the number of days spent by the prisoner in confinement prior to such sentence awaiting and during trial." The Commonwealth concedes this error. Accordingly, the case is remanded to the Superior Court for modification of the sentence as required by § 33A, and as thus modified the judgment is affirmed.

*So ordered.*