MARK R. WALTER *vs.* MARTIN C. BONITO & another.

Suffolk. December 4, 1974. — March 7, 1975.

Present: TAURO, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Practice, Civil,* Ordering verdict. *Evidence,* Of conviction, Impeachment of credibility. *Witness,* Impeachment. *Error,* Whether error harmful.

Where the evidence was in conflict as to the defendant's negligence in an action for injuries resulting from his operation of a motor vehicle, it was for the jury to assess the credibility of witnesses and the trial judge properly denied a motion of the defendant for a directed verdict. [120]

At the trial of an action arising from a collision between a motor vehicle operated by a defendant and one operated by the plaintiff,

where the plaintiff called the defendant operator as a witness for the plaintiff in his affirmative case, it was prejudicial and reversible error under G. L. c. 233, § 23, to permit the plaintiff, for the purpose of impeaching the defendant operator's credibility, to introduce in evidence records of convictions of the defendant operator of various motor vehicle violations; the records were not made admissible by § 21 or § 22. [120]

TORT. Writ in the Superior Court dated September 1, 1970.

The action was tried before *Thomas A. Johnson, J.,* a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*William G. Burke* for the defendants.

*William H. Shaughnessy (Jacob P. Drukman* with him) for the plaintiff.

KAPLAN, J. On December 31, 1969, a truck driven by Martin C. Bonito and owned by his employer, John J. Botti Co., Inc., skidded while descending a hill on Route 138 in Canton, crossed the center of the two-lane road, and collided with an oncoming Econoline van being driven by Mark R. Walter. Walter sustained personal injuries with connected medical expenses and loss of earnings, and, alleging negligence on the part of Bonito, brought the present action against Bonito and the Botti company. The plaintiff won a jury verdict in the Superior Court for Suffolk County on February 1, 1973, and the defendants by their bill of exceptions raise two points for review here: Should their motion for a directed verdict at the close of all the evidence have been granted, and was it prejudicial error to allow the plaintiff, who had called the defendant Bonito as a witness, to impeach him by introducing in evidence the records of five prior convictions for motor vehicle violations.

There were material differences between the plaintiff's and defendants' versions of the events leading to the col-

lision. In his testimony the plaintiff said that at the time of the accident he was beginning to ascend a hill at about five miles an hour, that the weather was bad, a mixture of snow, sleet, and rain, and the road was wet with patches of ice and snow. He testified that the defendants' vehicle was descending the hill at not less than twenty and maybe up to thirty miles per hour, not slowing down, and when ten to twenty feet from the plaintiff's van slid sideways, crossed the center of the two-lane road and struck the left front of the plaintiff's van, pushing it back twenty to twenty-five feet. He said the defendants' truck was not equipped with chains but did have deep rib snow tires.

The defendant Bonito confirmed that the accident consisted of his truck skidding across the center of the road into the plaintiff's van, but he presented an explanation different from the plaintiff's in his accident report filed with the Registry of Motor Vehicles and in answers to the plaintiff's interrogatories, all introduced in evidence by the plaintiff, and also in his testimony under questioning by the plaintiff's attorney. Bonito said that when he reached the crest of the hill and began to descend some 100 to 150 feet from the accident scene, he both down-shifted and applied his brakes; at that point he was going fifteen to twenty miles an hour but he slowed down as he approached the plaintiff's van ("I applied my brakes to make the hill, because with trucks on the hill you've got to go slow with them."). He testified that the road was wet, but that it was not raining or snowing at the time of the accident, which was about 11 A.M., and that he saw no icy patches and did not think there was any ice or snow on the road until he hit the icy patch that caused his truck to skid, turn sideways, and strike the plaintiff's van. After the skid began he blew his horn and tried to steer away in an attempt to avoid the collision. The van, he said, was not moved backward by the impact of the collision.

In the face of the conflict in the evidence — a conflict not resolved by photographs of the damaged vehicles introduced in evidence by the plaintiff — it was not error for the judge to decline to direct a verdict for the defendants. If the jury, evaluating the defendant Bonito's credibility, had chosen to believe him, they could have found that he was not negligent and that the collision arose from accident not reasonably avoidable. But believing the plaintiff, as evidently they did, the jury could conclude that the defendant Bonito was negligent in descending the hill at too high a rate of speed, with no attempt to slow down under conditions he observed as hazardous, making a skid likely, and with it a loss of control of the vehicle. The choice between believing the plaintiff and the defendant Bonito was one characteristically for the jury.

The defendants' second point is more compelling. As part of his affirmative case, the plaintiff called the defendant Bonito as his witness and, after eliciting testimony on the lines described, offered records of six convictions of Bonito in the District Courts for motor vehicle violations. These were: a 1970 conviction for driving in a break-down lane, resulting in a $5 fine; a 1969 conviction for speeding with a $15 fine; and 1964 convictions, stemming from a single incident, for drunkenness, which was filed, for operating under the influence of liquor, which resulted in a $100 fine, for operating to endanger, fined $20, and for leaving the scene of an accident, fined $20. These records were offered for the purpose of impeaching Bonito's credibility. The judge admitted the records with the exception of the conviction for drunkenness which had been placed on file. We are obliged to agree with the defendants' contention that the admission of these records was error.

The governing statute, G. L. c. 233, § 23, provides that "[t]he party who produces a witness shall not impeach his credit by evidence of bad character, but may contradict him by other evidence, and may also prove

that he has made at other times statements inconsistent with his present testimony." In *Labrie* v. *Midwood*, 273 Mass. 578 (1931), we held that the statute applied to a party who called his opponent as a witness: a plaintiff who had called a defendant as a witness was there held barred from impeaching his credibility by introducing a record of his prior conviction of crime. The court reasoned that "the whole purpose of introducing the record of the conviction of a witness of crime" was to "impeach the credit of the witness by evidence of bad character," and so the statute covered. *Id.* at 582. To the proposition that prior criminal convictions go to prove bad character, see *Commonwealth* v. *Arsenault*, 361 Mass. 287, 301 (1972); McCormick, Evidence, §§ 41-43 (1972); Wigmore, Evidence, § 980 (Chadbourn rev. 1970); Leach and Liacos, Handbook of Massachusetts Evidence, 121-126 (1967). We are aware that there is much sentiment and strong argument for allowing a party to impeach his own witness just as he can attack the opposition's, see Uniform Rules of Evidence, Rule 20, as found in 9A U. L. A. 607 (1965); Federal Rules of Evidence, Rule 607, 28 U. S. C. App. (Supp. V, 1975) (as enacted by P. L. 93-595, January 2, 1975, effective July 1, 1975); Wigmore, op. cit., at § 899, and particularly does the argument appear cogent when one's witness is the adverse party, for here the fiction that by offering a witness one "vouches" for him is most vacuous. See Rule 43 (b) of the Federal Rules of Civil Procedure, 28 U. S. C. Appendix (1970); Wigmore, op. cit., at § 916. But regardless of what the degree of our own enthusiasm might be for such a rule, we do not consider ourselves free to adopt it by decision in defiance of the statute as previously interpreted. Rule 43 (b) of our new Rules of Civil Procedure, 365 Mass. 806 (1974), departing from its Federal model which allows broad impeachment of the adverse party when called as a witness, expressly forbids impeachment in such a case "by evidence of bad character"; our rule thus accepted

G. L. c. 233, § 23, as a datum and the Reporters' Notes to the rule cite § 23 and the *Labrie* case.

Two further points may be mentioned. General Laws c. 233, § 22, permits a party who calls an adverse party to "cross-examine" him. The *Labrie* case considered and rejected the possible argument that § 22 overcame § 23, and history supports the conclusion, for § 22 derived from St. 1870, c. 393, § 4, and in 1870 it was already settled law in the Commonwealth that for impeachment purposes previous convictions could only be shown by introduction of the records and not by cross-examination in the usual sense, see *Commonwealth* v. *Quin,* 5 Gray 478, 480 (1855); *Root* v. *Hamilton,* 105 Mass. 22 (1870), a position which has indeed been repeatedly affirmed. See *Commonwealth* v. *Walsh,* 196 Mass. 369 (1970); *Commonwealth* v. *Arsenault, supra,* at 301; *Ford* v. *Kremer,* 360 Mass. 870 (1972); *Commonwealth* v. *Connolly,* 356 Mass. 617, 627 (1970). The second point, which the *Labrie* case also disposed of, is the possible argument that G. L. c. 233, § 21, the general statute permitting use of convictions for impeachment, might override the more specific restrictions of § 23. The ancestor of § 21, St. 1851, c. 233, § 97, was enacted at a time when one still could not impeach the credibility of one's own witness in any respect, see *Whitaker* v. *Salisbury,* 15 Pick. 534, 544-545 (1835); *Adams* v. *Wheeler,* 97 Mass. 67, 67-68 (1867), consequently it would not make sense to read § 21 as detracting from a later statute permitting such impeachment in only limited ways.* So it was error to allow the defendant Bonito to be impeached

---

*See, now, St. 1974, c. 502, approved July 9, 1974, adding to G. L. c. 233, § 21, a provision that the record of conviction of a witness for a "traffic violation upon which a fine only was imposed" shall not be shown to affect his credibility "unless he has been convicted of another crime or crimes within five years of the time of his testifying." REPORTER.

by the introduction of the records of his prior convictions.[1]

It remains to decide whether the error was sufficiently prejudicial to require a new trial. We hold that it was. A limiting instruction was indeed given to the effect that the convictions were to be used only to impeach credibility, and, as Hennessey, J., noted, concurring in *Commonwealth* v. *DiMarzo*, 364 Mass. 669, 682 (1974), in logic, "Prior convictions, even as applied only to the credibility issue, have little or no probative value in most instances."[2] But we cannot fail to recognize that where,

---

[1] Deciding this issue as we do, we do not reach the defendants' alternative argument that the conviction records should not have been admitted without a showing by the plaintiff that Bonito was represented by counsel in those proceedings. See *Carey* v. *Zayre of Beverly Inc. post*, 125 (1975), decided this day. We point out, however, that in none of the cases involved was any penalty beyond a fine imposed, so that *Argersinger* v. *Hamlin*, 407 U. S. 25 (1972), which held unconstitutional the imposition of jail sentences where defendants in misdemeanor cases were not represented by counsel, does not apply. It follows that any argument for exclusion because of lack of counsel would be based, first, upon a claim that due process requires the provision of counsel in at least some misdemeanor cases even where no jail sentence is imposed, or, second, upon a claim of violation of Rule 10 of the General Rules, 347 Mass. 809 (1964) (now S.J.C. Rule 3:10, as amended, 355 Mass. 803 [1969], and Rule 79 of the Rules of the District Courts [1965]), requiring the provision of counsel for an indigent defendant, or a showing that counsel has been waived, whenever the defendant is "charged with a crime, for which a sentence of imprisonment may be imposed." See *Carey* v. *Zayre of Beverly Inc., supra*, at 127, n. 2.

[2] The new Federal Rules of Evidence exhibit the modern trend toward rationalizing, and thereby limiting, the use of prior convictions to attack the credibility of a witness. Under Rule 609 (a) the convictions admissible to attack credibility are confined to those involving dishonesty or false statement; also those punishable by death or imprisonment for more than one year if the court decides that their probative value exceeds their prejudicial effect. The Uniform Rules of Evidence are even more restrictive; by Rule 21 only crimes involving dishonesty or false statement may be used. See *People* v. *Sandoval*, 34 N. Y. 2d 371, 376-377 (1974), which discusses the use of prior convictions for impeachment purposes under a system in which the trial judge has discretion to admit or exclude such

as here, the prior convictions relate to offenses similar to the tort at bar, there is an especially serious danger that a jury will disregard limiting instructions and allow the convictions to influence their deliberations as substantive evidence. See *Commonwealth* v. *DiMarzo, supra,* at 679-682 (concurring opinion of Hennessey, J.); *People* v. *Sandoval,* 34 N. Y. 2d 371, 377 (1974). In this light, and considering the condition of the rest of the proof in the case, we cannot say that the defendants might not have prevailed if the records of conviction had been excluded. Hence a new trial is called for.[3] See *Labrie* v. *Midwood,* 273 Mass. at 582 (1931).

*Exceptions sustained.*

---

evidence after a balancing of its probative value as to the defendant's credibility against its prejudicial effect. The opinion notes that " [t]he commission of an act of impulsive violence, particularly if remote in time, will seldom have any logical bearing on the defendant's credibility . . . at the time of trial. Further, proof of such a crime may be highly prejudicial . . .. To the extent, however, that the prior commission of a particular crime of calculated violence or of specified vicious or immoral acts significantly revealed a willingness . . . to place . . . his individual self-interest ahead of principle or of the interests of society, proof thereof may be relevant to suggest his readiness to do so again on the witness stand . . .. [Q]uestions as to traffic violations should rarely, if ever, be permitted." [See note * above.]

[3] *Subilosky* v. *Commonwealth,* 358 Mass. 390 (1970), and *Commonwealth* v. *Boudreau,* 362 Mass. 378 (1972), which found the erroneous admission of prior convictions harmless error, involved situations in which other convictions for serious crimes had been properly admitted, so the improperly admitted records had little additional impact. See *Carey* v. *Zayre of Beverly Inc., post,* 125 (1975). Hence they are inapplicable here. Nor was the defendant Bonito so impeached by variations between his testimony at trial and interrogatories and an accident report he had filled out that the added impeachment was harmless. Compare *United States* v. *Penta,* 475 F. 2d 92, 96 (1st Cir. 1973), cert. den. 414 U. S. 870 (1973), in which the admission of prior convictions for impeachment, even if improper, was held to be harmless error in view of the "enormous damage already done to his credibility" by other impeaching evidence.