Anthony GRANDISON, Appellant,

v.

WARDEN, MARYLAND HOUSE OF CORRECTION and Mrs. Linda A. Corrick, Records Supervisor, Appellees.

No. 77–2186.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1978.

Decided July 25, 1978.

Dorothy Britt and Ronald Locke, Third Year Law Students (Peter S. Smith, Adrienne E. Volenik, Maryland Juvenile Law Clinic, Baltimore, Md., Patricia Butler and Elvira White, Third Year Law Students, on brief), for appellant.

Diane G. Goldsmith, Asst. Atty. Gen., Baltimore, Md. (Francis B. Burch, Atty. Gen. of Maryland, Clarence W. Sharp, Asst. Atty. Gen., Chief, Crim. Div., Kathleen M. Sweeney, Asst. Atty. Gen., Baltimore, Md., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, RUSSELL, Circuit Judge, and HOFFMAN *, District Judge.

WALTER E. HOFFMAN, Senior District Judge:

The appellant, Anthony Grandison, has appealed from the denial by the District Court of Maryland of his application for a writ of habeas corpus. The primary issues raised for our consideration are whether the appellant waived his right to be tried as a juvenile ·offender by misrepresenting his age, and whether the use of prior convictions to impeach appellant's testimony at trial violated his rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution when those convictions were held to be void under *Long v. Robinson*, 316 F.Supp. 22 (D.Md.1970), *aff'd*, 436 F.2d 1116 (4th Cir. 1971), decided subsequent to appellant's trial. In *Woodall v. Pettibone*, 465 F.2d 49 (4th Cir. 1972), *cert. denied*, 413 U.S. 922, 93 S.Ct. 3054, 37 L.Ed.2d 1044 (1973), this court held *Long* retroactive. We affirm in part, for different reasons, and remand in part.

The history of the appellant's dealings with the Maryland criminal justice system is, unfortunately, not an uncommon one. On February 24, 1970, the appellant received a twenty-year sentence as a result of his convictions in a Maryland court of robbery with a deadly weapon, two assaults, attempted escape, and the unlawful wearing of a concealed weapon. Appellant perpetrated these offenses in Baltimore during 1969, when he was sixteen years of age. The offenses were interrelated, and were handled in a single trial. At that time, Maryland courts recognized the legis-

lative framework created by the interaction of a Baltimore City ordinance and a Maryland statute: Article 4, section 240(b) of the Charter and Public Local Laws of Baltimore City, and Article 26, sections 51–71 of the Maryland Code of Public and General Laws, respectively. The former provided a juvenile age limit of sixteen years, while the latter exempted Baltimore City youth from the general statewide juvenile age limit of eighteen years. The effect of these two statutes was to provide juvenile court jurisdiction over sixteen and seventeen-year old children in circuit courts in all areas of Maryland except Baltimore City.

On August 6, 1970, the United States District Court for the District of Maryland held the above distinction was arbitrary and unreasonable, and constituted a denial of the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution. *Long v. Robinson*, 316 F.Supp. 22 (D.Md.1970). On January 18, 1971, this court affirmed. *Long v. Robinson*, 436 F.2d 1116 (4th Cir. 1971).

On February 1, 1971, the appellant's convictions were affirmed by the Court of Special Appeals of Maryland. Certiorari was denied by the Maryland Court of Appeals on April 5, 1971. The appellant challenged the validity of the 1970 convictions in a state habeas corpus action on the ground that he was sixteen at the time of the offenses, and that the juvenile court had never waived jurisdiction to the adult court. *Long v. Robinson, supra*, was cited as authority. The state judge rejected this contention, and premised his ruling on a finding of fact that, although the appellant was actually sixteen years old at the time of the offenses, at several crucial stages of the proceedings he had misrepresented his age to the court as nineteen. On this basis, it was determined that the appellant was estopped from asserting the invalidity of the convictions. *See* Supplemental Brief of Appellees at 8–9.[1]

---

* Senior District Judge for the Eastern District of Virginia, sitting by designation.

1. On November 18, 1974, while on work release pursuant to the 1970 sentences, Grandison was arrested and charged by indictment with possession of a handgun in violation of Ann.Code

On November 29, 1975, appellant was found guilty of sodomy and assault by a jury in the Criminal Court of Baltimore. It is this conviction with which we are concerned in the present action. In a pretrial motion, the appellant sought to preclude the state from introducing evidence of his 1970 convictions, on the ground that they were void under *Long v. Robinson, supra.* In fact, on November 25, 1975, the appellant filed for a writ of habeas corpus in the United States District Court for the District of Maryland. Although appellant told the state trial judge, in the instant case, that a federal habeas corpus proceeding on the same ground was pending, the trial judge ruled, on the basis of the prior state habeas corpus decision, that the convictions could properly be used to impeach the credibility of the appellant as a witness.

The evidence was as follows:

Appellant's conviction arose out of an incident which occurred on May 27, 1975, in the Baltimore City Jail involving Thomas Maddox, who was awaiting trial in the U.S. District Court on a charge of conspiracy to manufacture DMT, an hallucinogenic drug. Mr. Maddox, who had previously been convicted on a charge of distribution of methadone, had been incarcerated in the City Jail since March 29, 1975.

Maddox testified that he was the subject of three separate sexual attacks by fellow inmates of the City Jail on May 27th. The series of attacks began at approximately 10:00 a. m. when an inmate known as 'Fly' asked Maddox to accompany him to the cell of another inmate known as 'Buttons', apparently just to talk. The policy of the Baltimore City Jail, as described by appellant's witness Lieutenant Joseph Frank, a correctional institute employee, was to keep the individual cells open for a period of 12 hours a day so that the inmates were free to move around within the larger enclosed area, 'M' section, and visit each other in

their respective cells. The inmates were allowed to drape blankets and other materials over the bars of their cells as a shield against the lights, and to provide a certain degree of 'privacy.' Mr. Maddox stated that he covered his cell with a garbage bag liner.

When the prosecution's chief witness entered 'Buttons'' cell, 'Fly' suddenly held a sharp pencil to his throat to force him to submit to homosexual relations. Under fear of physical harm, Mr. Maddox testified, he submitted. After returning to his cell where he confided in his roommate, Ernest Brinkley, he rested. He said he did not report the incident for fear of retaliation.

At approximately 12:00 p. m. the same day, another inmate, 'Sonny', entered Maddox's cell and threatened him with a shank—a metal rod which, when sharpened at one end, is used as a knife—to force him to yield to another sexual assault. According to the victim's testimony, Sonny raped him and then left. Shortly thereafter, the appellant whom Maddox knew for about 2 weeks, entered the cell and 'calmed me down a little bit.' The appellant returned later, at approximately 6:00 p. m.

When the appellant returned, both Maddox and Brinkley were in the cell, and, according to the testimony of the cell mates, appellant talked for awhile on the subject of having homosexual relations with Maddox. The latter at first refused, but later yielded when appellant stated that it would be wise for Maddox to engage in relations with him because 'if you don't, you are going to end up doing it with a lot of other people in this jail or in this section.' Although it was conceded at trial that the victim did not resist, and in fact, undressed himself, he testified that he did so only because he 'was scared for [his] life.' Maddox stated that the appellant's penis penetrated his

of Md., Art. 27, § 36B. On August 1, 1975, he was found guilty of the handgun violation and, on August 22, 1975, he was sentenced to a term of eighteen months. This sentence was to run

consecutively to his 1970 sentence. The 1975 conviction was later affirmed by the Court of Special Appeals of Maryland. 32 Md.App. 705, 363 A.2d 523 (1976).

anus during the course of the sexual assault.

Brinkley had left the cell prior to the perpetration of the sexual act, but returned shortly thereafter to find the appellant sitting in the cell and Maddox lying on the bed without a shirt. Appellant told the two of them not to report the incident to anyone. At that time, the appellant told Maddox to accompany him to the shower, and they left the cell together.

For the next two days, Maddox remained in his cell to avoid confrontation and any further incidents. However, he was called from his cell on May 29th, at about 8:30 p. m., to see the U.S. Deputy Marshall [sic] for some reason unknown to him. His trip was interrupted when he met 'Buttons' who, with the help of another inmate, forced Maddox into a dark cell, whereupon he was sexually assaulted orally and anally by several individuals. Afterwards, he was moved to a different section of the prison; and when recalled to the Marshall's [sic] office, on the next morning, he informed the authorities of the series of attacks.

Dr. John F. Cadden, Jr., a medical witness for the State, testified that he examined the victim on May 30, 1975 at the U.S. Public Health Service Hospital. His examination revealed several blood blisters in the area of the rectum and a massively lacerated mucosa. He concluded that Maddox had been raped sometime within the previous 2 to 3 days. In addition, the doctor indicated that he found several bruises on the neck and both arms of the victim.

Appellant testified on his own behalf and denied having sexual relations with any of the inmates including the prosecuting witness. He stated that he was not in the cell block area from 10:00 a. m. to 12:30 p. m. the day of the 27th, and that he was using the telephone from 2:20 p. m. to 6:30 p. m. that same day. He also denied having any knowledge of any sexual attack on Mr. Maddox.

*Anthony Grandison v. State of Maryland,* No. 80 (Court of Special Appeals of Maryland, October 26, 1976) at 1–4.

The appellant was unsuccessful in proving any of his alibis. He testified that he had a visit from his attorney on the day in question from 10:00 a. m. to 12:30 p. m. However, one of his own witnesses, Officer David Dorman, testified that he had no visiting cards for that day for Grandison. In trying to explain his alleged absence from the situs of the incident, the appellant testified that he was on the phone for four hours in the afternoon and hadn't gone to any meals because he was a vegetarian. It is apparent that the jury was unwilling to accept either explanation.

The appellant called fifteen witnesses, five of whom were inmates who testified that defendant was of good character. However, the state impeached these character witnesses by bringing to light serious prior convictions. Several witnesses called by the appellant gave testimony damaging to his case. Ernest Brinkley, the victim's cellmate, testified that he had been threatened by the appellant to write a statement that Grandison had nothing to do with the incident. Record, Vol. III, at 290. In addition, as previously noted, there was the incriminating testimony of Officer Dorman.

As the district court noted at page 8 of its unpublished opinion, the appellant's prior record was brought up three times during the course of the proceedings. First, it was used to impeach him when he took the stand. Second, the state's attorney mentioned it in closing argument to the jury: "Recall that the Defendant has been convicted of an armed robbery, assaulting two police officers, attempted escape, and carrying a concealed weapon, a pistol. This is a man who would have you believe that he is not violent." Record, Vol. III, at 511.

Finally, the appellant's record was known to the district court at the time of sentencing, which took place on December 15, 1975. The appellant was sentenced to a term of ten years for sodomy, and received a concurrent ten-year term on the common law simple assault charge. The sodomy sentence was to run consecutively to the twenty-year sentence he was then serving.

It was not until June 9, 1976, that a decision was rendered by the District Court of Maryland in regard to the appellant's November 24, 1975, application for a writ of habeas corpus. The district judge held that the appellant's 1970 convictions were null and void under the holdings of *Long v. Robinson, supra,* and *Woodall v. Pettibone, supra.*[2] *Grandison v. Warden, Maryland House of Correction,* Civil No. HM 75–1724 (D.Md., filed June 9, 1976). It was ordered that these convictions be expunged from the appellant's record.

On October 20, 1976, Grandison filed another petition for a writ of habeas corpus in the District Court of Maryland. The issues raised in that petition arose out of the relationship between the district court's previous order of June 9, 1976, by which the 1970 convictions were vacated, and the two subsequent convictions of the appellant in the Criminal Court of Baltimore. The appellant contended, as relevant to this appeal, that the state's use of void prior convictions for impeachment and sentencing purposes violated his due process rights under the Fourteenth Amendment, thereby rendering the convictions and the sentence illegal.

Six days later, on October 26, 1976, the Court of Special Appeals of Maryland affirmed appellant's conviction in the Criminal Court of Baltimore. In noting any effect of the June 9, 1976 decision of the District Court of Maryland, the Court of Special Appeals stated:

> We were told at oral argument that appellant's federal *habeas corpus* application had been granted by Judge Herbert F. Murray of the United States District Court for the District of Maryland on June 9, 1976, and that appellant's armed robbery, assault and escape convictions were declared null and void. We have since examined Judge Murray's Memorandum and Order and observe that appellant's convictions of February 24, 1970

were also expunged from his record; and that the court stated that the effect of its action was not to release the petitioner because he was serving the 10 year sentence imposed by Judge Liss in this case. Appellant now contends that the admission of his prior criminal record in the trial below amounted to reversible error. We disagree.

*Anthony Grandison v. State of Maryland,* No. 80 (Court of Special Appeals of Maryland, filed October 26, 1976) at 7–8.

The court continued:

> Judge Liss admitted the conviction on the basis of Judge Karwacki's ruling that it was valid, notwithstanding appellant's actual age. The later disposition by U.S. District Judge Murray of the federal *habeas corpus* application affords no support to appellant's assertion of error. Certainly, it did not have the effect of invalidating retroactively the evidentiary ruling of the trial judge. We find no abuse of discretion in permitting the use of appellant's prior criminal record to impeach his credibility as a witness.

*Id.* at 9.

The legality of the sentence was also affirmed. *Id.* at 11. An application for certiorari was denied by the Court of Appeals of Maryland on January 26, 1977.

At the direction of Judge Murray of the District Court of Maryland, a hearing was held on April 29, 1977, to consider the issue of whether or not the state's use of the void prior convictions for impeachment and sentencing purposes violated the appellant's due process rights under the Fourteenth Amendment, thereby rendering the conviction and sentence illegal. The purpose of this hearing was to expedite a decision as to the appellant's October 20, 1976 petition for a writ of habeas corpus.

On July 18, 1977, the district court held that the use of the *Long v. Robinson* -void-

---

**2.** A *nunc pro tunc* waiver hearing was held before the district court on April 19, 1976, to give the state the opportunity to establish that the Maryland Juvenile Court judge would have waived jurisdiction to an adult court. Such a waiver hearing is required under the aforementioned authority. Upon hearing the evidence presented at the waiver hearing, the district court concluded that the juvenile court would not have waived jurisdiction over the appellant.

ed convictions was harmless error, and on July 19, 1977, it ordered the appellant's application for a writ denied.

Judge Murray was guided by the decision of the identical issue by Judge Harvey of the United States District Court for the District of Maryland in *Lambert v. Warden*, No. HM 74–404 (D.Md., filed March 7, 1975). In that case, the petitioner contended that the convictions used by the prosecution to impeach his credibility were constitutionally void under *Long v. Robinson*. Judge Harvey concluded:

Thus, the question which must be determined is whether under the facts of this case the cross-examination of petitioner concerning his prior convictions was harmless error beyond a reasonable doubt. The *Chapman* [*v. California*, 386 U.S. 18 (87 S.Ct. 824, 17 L.Ed.2d 705) (1967)] opinion articulated the test in two ways: (1) Is there a reasonable possibility that the evidence complained of might have contributed to the conviction, and (2) Did the constitutional error, beyond a reasonable doubt, not contribute to the verdict obtained? 386 U.S. at 24 (87 S.Ct. 824).

Memorandum and Order at 7.

While Judge Murray acknowledged that ·*Lambert* was a court trial, rather than a trial by jury, he noted:

However, the court in *Lambert* did not hold that only in cases of a court trial would the use of *Long* convictions to impeach be harmless error. Whether the trial was to the court or to a jury is one of the factors to be considered, and in this case is a factor in petitioner's favor.

*Anthony Grandison v. Warden, Maryland House of Correction, et al*, Civil No. HM 76–1590 (D.Md., filed July 18, 1977) at 8.

In finding harmless error, the district court reasoned:

Most importantly, this was a trial involving the credibility of two persons, both of whom were impeached by prior convictions. The victim was impeached through the use of prior convictions for narcotics distribution and conspiring to manufacture narcotics (T. 179). The setting of the crime was in the Baltimore City Jail, and the witnesses were all inmates or jail personnel. The jury knew that Grandison was incarcerated, just as they knew the victim was incarcerated. Grandison on direct examination by his own counsel testified (T. 347–348) that he had been incarcerated for the past seven years, including the Maryland Penitentiary, the Maryland Correctional Camp Center, and the Maryland House of Correction. In light of the setting and background of the crime, there is no reasonable possibility that the impeachment of petitioner by his prior convictions contributed to his conviction.

In conclusion, the court holds that the impeachment of Grandison by the *Long* convictions was harmless error because the evidence against Grandison was strong and because the setting of the crime made the jury aware that the defendant, as well as the victim, were likely to have been involved in criminal activity. In the court's view, there is no reasonable possibility that the evidence complained of might have contributed to the conviction, and the constitutional error, beyond a reasonable doubt did not contribute to the verdict.

*Id.* at 10.[3]

Notice of appeal was timely filed, and the district court granted a certificate of probable cause on August 29, 1977.

---

**3.** It should be noted that the appellant contended before Judge Murray that the trial judge of the Baltimore Criminal Court conceded that the use of prior convictions would not be harmless error if those convictions were subsequently declared invalid. Appellant relied on the following statement by the trial judge:

I make the point to you that if at some later date [the 1970 conviction] is declared to be an invalid one, it may very well be, that that

will be grounds for reversing any decision in this case. But I can't guess that. And I can't anticipate it. And I certainly am not in position to try it collaterally rather than when the issue is firmly in front of me.

Record, Vol. I, at 119.

However, Judge Murray emphasized:

In the court's view, the statement of the trial judge is not relevant to the determination this court must make concerning the use

## I

### *Waiver*

As a preliminary matter we must consider appellee's argument that the appellant placed himself out of the juvenile classification, and the protection of *Long v. Robinson, supra*, by consistently lying about his age. At a number of the stages of the state court proceedings, Grandison gave his age as nineteen.[4]

In the memorandum of law filed by the State of Maryland in *Grandison v. Warden*, Civil No. HM 75–1724, in 1976, it is recounted at pages 1–2 that "The Petitioner was born on January 6, 1953, but had consistently used a birth date of January 6, 1950." This court is thus of the opinion that Judge Murray had knowledge of the fact that appellant had consistently lied about his age. Despite this knowledge, Judge Murray ordered in *Grandison v. Warden*, Civil No. HM 75–1724 (D.Md., June 9, 1976) that:

(1) Mr. Grandison's application for a writ of habeas corpus be granted;

(2) Mr. Grandison's convictions of February 24, 1970 be vacated and declared null and void; and

(3) Mr. Grandison's convictions of February 24, 1970 be expunged from his record.

We are not called upon to find whether error was committed by Judge Murray in

entering the aforesaid order as there was no appeal in that case and it is not before us. In *Penn v. Peyton*, 270 F.Supp. 981 (W.D.Va.1967), in a proceeding on a petition by a state prisoner for a writ of habeas corpus, Judge Dalton held, *inter alia*, in denying the petition, that since the prisoner had misrepresented to police, his attorneys and the court that he was eighteen years of age when, in fact, he was three months short of his eighteenth birthday, he had waived his right under the Virginia statutes as to whether he should be tried as a juvenile. More specifically, the district court found:

This court feels that petitioner waived his right to the statutory investigation by misrepresenting to the trial court that he was 18 years of age. To hold otherwise would place an unconscionable burden on the state courts. To uphold petitioner's contention would require the state courts to conduct an independent investigation to determine the true age of every defendant. Any minor defendant would be able to mislead a court and take his chances on being tried as an adult, and then if unsatisfied with the result, the minor defendant could assert his minority and have the conviction set aside. "While it is true that courts should always act with caution where minors are

---

of the *Long* convictions. The trial judge did not have the issue before him as the prior convictions were still valid at time of trial. Memorandum and Order at 9.

4. Judge Solomon Liss of the Criminal Court of Baltimore noted the following at the hearing on the *in limine* motion to prevent the state from introducing the 1970 convictions:

THE COURT: Mr. Grandison, I note that Judge Karwacki indicates that at the time of the hearing before him on the [state] *habeas corpus*, not only did he have the record of the transcript of the appearance before Judge Ross in which you said your age was nineteen years of age, but in addition to that, you filed an affidavit and a summary of financial status on June 30, 1969, to establish your indigency, and right to court-appointed counsel, and at that time you gave your age at nineteen. At the arraignment on July 11, 1969, you told Judge Ross you were nineteen; in the course of your examination by James E. Smith, the second, medical doctor, who

was the Assistant Chief Medical Officer of the Supreme Bench of Baltimore City, following the conviction, for the purpose of presentence medical report, you gave your age as twenty, and in acknowledging an order for examination at Patuxent Institution by Judge Dorf on May 26, 1970, you gave your age as twenty. Are you saying you did none of these things?

THE WITNESS: I'm saying none of these, these facts never proven. My lawyer stipulated with the prosecutor to introduce that as evidence in order that he, they had some stipulation worked out. In other words, it was never proven that it was handwriting, whether that actually came from me. And Judge Karwacki ruled that it would not be admissible, because it was nothing but a copy, no original. If my attorney would object to it—

Record, Vol. I, at 60–61.

Mr. Grandison's account is squarely contradicted by the record.

prosecuted for criminal offenses, it is also true that final judgments of courts should be respected and, even in habeas corpus proceedings, should be upheld unless it clearly appears that the defendant has been denied some right guaranteed to him by law." *Wade v. Skeen*, 140 W.Va. 565, 85 S.E.2d 845, 848–849 (1955). In the present case petitioner was accorded all of the constitutional rights of an adult, and this court feels that petitioner waived his rights as a minor by misrepresenting his true age.

270 F.Supp. at 984–85.

We note that the aforementioned principle has found support in a number of state courts. *State ex rel. Hinkle v. Skeen*, 138 W.Va. 116, 75 S.E.2d 223, 231 (1953), *cert. denied*, 345 U.S. 967, 73 S.Ct. 954, 97 L.Ed. 1385 (1953); *State v. Superior Court of Pima County*, 7 Ariz.App. 170, 436 P.2d 948, 953 (1968) (and authority cited therein); *Sheppard v. Rhay*, 73 Wash.2d 734, 440 P.2d 422, 426 (1968); *People v. Henderson*, 2 Ill.App.3d 285, 276 N.E.2d 377 (1971).

We leave for a future date the issue as to whether a juvenile, by misrepresenting his age as that of an adult, waives his rights to be treated as a juvenile. Since Judge Murray's order of June 9, 1976 was not appealed, we are not disposed to disturb those findings, although we note that, for purposes of this proceeding, we do not feel bound by that order.

## II

*Use of Void Convictions to Impeach*

■ Appellant contends that the use of his prior convictions, such convictions being void under *Long v. Robinson, supra*, to impeach his testimony at trial violated his right to due process under the Fourteenth Amendment to the United States Constitution.

In *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), the Supreme Court considered whether prior convictions obtained when a defendant was without counsel in violation of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), could be used as evidence in that defendant's trial. The defendant was charged and convicted of assault with intent to commit murder. At the beginning of the trial, the indictment which was read to the jury also alleged four prior convictions that, if proved, would have increased the punishment for assault under the Texas recidivist statute. When the prosecutor proceeded to offer two of these prior convictions as evidence of the offense of assault with intent to murder, defense counsel objected on the ground that defendant had not been represented by counsel at the trials for these prior convictions. Reserving his ruling on these objections which occurred in the presence of the jury, the trial judge eventually ruled that only one of the convictions could be used. In reversing Burgett's conviction, the Supreme Court reasoned:

> To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right. (citations omitted).

389 U.S. at 115, 88 S.Ct. at 262.

The Court concluded that the admission of a prior criminal conviction which is constitutionally infirm under the standards of *Gideon* is "inherently prejudicial." 389 U.S. at 115, 88 S.Ct. 258.

Subsequently, in *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), the Supreme Court utilized *Burgett, supra*, to address the issue of the use of void prior convictions to impeach. In *Loper*, the prosecutor had been allowed to cross-examine the defendant with regard to past felony convictions void pursuant to *Gideon*. The Court succinctly framed the issue presented: "Does the use of prior, void convictions for impeachment purposes deprive a criminal defendant of due process of law where their use might well have influenced the outcome of the case?" 405 U.S. at 480, 92 S.Ct. at 1018.

In answering this question in the affirmative, the Supreme Court emphasized that the prior invalid convictions were based on a denial of counsel, which impugned the integrity of the fact-finding process, and thus a conviction obtained after a trial in which the defendant was denied the assistance of a lawyer lacked reliability. 405 U.S. at 483–484, 92 S.Ct. 1014.

Appellant contends that any distinction between convictions void under *Gideon v. Wainwright* and convictions void under *Long v. Robinson* does not mandate a different result. Language of this court from *Woodall v. Pettibone*, 465 F.2d 49 (4th Cir. 1972), *cert. denied*, 413 U.S. 922, 93 S.Ct. 3054, 37 L.Ed.2d 1044 (1973), is highlighted by the appellant:

> It is true, as the state contends, that the unconstitutional treatment of petitioners does not relate to the accuracy of the fact finding function of the judicial process. But as we said in [*Kemplen v. State of Maryland*, 428 F.2d 169 (4th Cir. 1970)], the normal waiver proceeding is a critical point in the criminal proceedings against a juvenile. It is "the only opportunity an accused has to plead the defense of his diminished responsibility as a juvenile." *Kemplen*, at 177. To deny juveniles in Baltimore the opportunity of such a defense and to allow it to all other juveniles in Maryland seems to us so fundamentally unfair as to impeach the validity of the "adult" proceedings and render unreliable the guilty verdicts obtained in these proceedings. 465 F.2d at 52.

Appellant argues that by this holding we recognized the adjudication of delinquency as "another critical stage." Brief of Appellant at 9. The appellant argues that this court in *Woodall* thus concluded that retroactivity was appropriate not only where the illegal procedure directly taints the accuracy of the process at the *trial* stage, i. e., the fact-finding stage, but also when the integrity of *another* critical stage of the process is undermined by the unconstitutional practice.

Appellant concludes by contending that this precise issue has been determined in two previous decisions of the United States District Court for the District of Maryland. In *Lambert v. Maryland*, Civil No. HM 74–404 (D.Md., filed March 7, 1975), the court recognized that under *Burgett* and *Loper*, the use of convictions, void pursuant to *Long*, in subsequent criminal proceedings for impeachment purposes was constitutional error.[5] In *Douglas v. Warden*, 399 F.Supp. 1 (D.Md.1975), the court again had the opportunity to address the issue, stating:

> It is clear, as Judge Harvey so well explicated in *Lambert v. Maryland*, Civil No. H–74–404, decided March 7, 1975, that it is constitutional error, pursuant to the combination of the doctrine of *Burgett, Loper* and *Long*, for a conviction which was entered after *Long* and which was invalid under *Long*, to be utilized to impeach the credibility of a defendant who takes the witness stand in his own defense. Since the effective date of *Long*, a Maryland prosecutor must bear the burden of checking to make certain that a prior conviction was obtained under circumstances when not only the defendant's rights under *Gideon*, but also under *Long*, were fully respected, before that prosecutor may utilize such prior conviction. (footnote omitted)

399 F.Supp. at 6.

Appellees submit that convictions which offend *Long* differ considerably from those which offend *Gideon*. In *Douglas, supra*, at 9, the District Court of Maryland articulated these differences:

> The latter [convictions which offend *Gideon*] are improper *per se*, while the former [convictions which offend *Long*] are improper only if and when other procedures are deemed to have been permitted to some, and denied to other, defendants who otherwise are alike. Accordingly, there is nothing inherently wrong with convictions which offend *Long*. *On their*

---

5. In *Lambert*, the court found that the error was harmless beyond a reasonable doubt.

*own* they do not violate any right of a defendant. (Emphasis in original) [6]

Thus, although the constitutional infirmities in *Burgett* and *Loper* dealt with the use of prior void convictions, there is a significant difference between the defects in those cases and the defect in the case at bar. We agree.

While the appellant argues that in *Woodall v. Pettibone, supra,* this court recognized the adjudication of delinquency as "another critical stage," we also noted, in so ruling, that "it is true, as the state contends, that the unconstitutional treatment of petitioners does not relate to the fact finding function of the judicial process." 465 F.2d at 52. Moreover, as noted by Judge Kaufman in *Douglas, supra,* at 9, the focus in *Woodall* was only to determine the retroactivity of *Long* and not to consider the use to be given a void *Long* decision which was later used for impeachment purposes:

> [T]his Court has not lost sight of Judge Craven's statement (at 52) in *Woodall* that "[t]o deny juveniles in Baltimore the opportunity of such a defense and to allow it to all other juveniles in Maryland seems to us so fundamentally unfair as to impeach the validity of the 'adult' proceedings and render unreliable the guilty verdicts obtained in these proceedings." (footnote omitted) However, in so doing, Judge Craven was seemingly substantially tracking language which he had quoted earlier in *Woodall* (at 51) from *Williams v. United States,* 401 U.S. 646, 653, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), dealing with the tests to be applied in determining whether a constitutional ruling should be given retroactive effect, and apparently *was not considering the question of whether his ruling in Woodall should be given retroactive effect for purposes of voiding a later conviction obtained in a trial in which the earlier conviction, which under Long's subse-*

*quently announced doctrine, was erroneously applied for impeachment purposes.* (Emphasis added)

In *United States v. Graves,* 554 F.2d 65 (3rd Cir. 1977), the defendant-appellant was convicted of having made a false statement on a registration form in connection with the purchase of a shotgun and having received a shotgun which had moved in interstate commerce after he had been convicted of a felony. On appeal, the Third Circuit held the fact that appellant contended that the underlying felony was invalid because of the unconstitutionality of the manner in which state juvenile authorities had waived jurisdiction over him to permit him to be tried as an adult on a charge of auto larceny did not preclude use of that felony as the predicate to the weapons charges. Significant in the resolution of the present issue is the language at page 82 of that opinion:

> Finally, it is questionable whether *Burgett* governs the constitutional right that Graves raises in this appeal. As discussed earlier, Graves alleges that his prior state conviction denied him due process, contending that the hearing which resulted in the transfer of his case from juvenile court was contrary to procedures mandated in *Kent* [*v. United States,* 383 U.S. 541 [86 S.Ct. 1045, 16 L.Ed.2d 84], (1966)]. By contrast, in announcing the *Burgett* rule, the Supreme Court was concerned specifically with the Sixth Amendment right to counsel. Indeed, the Court has applied *Burgett* only in cases involving that fundamental guarantee, and has declined to do so where other rights have been concerned, despite opportunities to broaden its holding.
>
> It is clear that *Gideon v. Wainwright,* the landmark articulation of the right to counsel, constituted the foundation of *Burgett.* Besides enunciating the rule that a "conviction obtained in violation of *Gideon* [may not] be used against a per-

---

**6.** The court in *Douglas* held that the use for impeachment purposes of prior juvenile convictions, which were entered before *Long* held unconstitutional the Maryland statutes previously mentioned, in a robbery trial held before such decision did not invalidate the conviction obtained in the robbery trial in view of a conviction for another offense obtained in a jury trial which in and of itself was conducted with respect for principles of fundamental fairness.

son either to support guilt or enhance punishment for another offense," the Supreme Court expressly rendered its decision in *Burgett* so that *Gideon* would not "suffer serious erosion." Thereafter, in both *Tucker* [*United States v. Tucker*, 404 U.S. 443 [92 S.Ct. 589, 30 L.Ed.2d 592], (1972)] and *Loper*, the Supreme Court reaffirmed that *Burgett* essentially was a "sequel" to or gloss on *Gideon*. Since *Burgett* has been inextricably linked to *Gideon* by the Supreme Court, we are reluctant to extend its holding to the type of constitutional infringement alleged by *Graves*. This is particularly the case because no compelling reason for doing so has been advanced.

The temptation to extend rights to their logical margins frequently is difficult to resist, and we recognize that this appeal affords an alluring opportunity for such extension. However, the fact is that the judicial process, to a considerable extent, consists of line drawing. We believe that *Burgett* does constitute a line of demarcation across which we should not traverse, absent the imprimatur of the Supreme Court. (footnotes omitted)

The Third Circuit concluded, *inter alia*, that *Burgett* would not seem to stand as an impediment to the use of an outstanding criminal conviction as an antecedent to firearms violations, especially where the defendant challenges the constitutionality of the prior conviction on grounds other than a denial of counsel. 554 F.2d at 82.

We feel *Graves* is persuasive authority for the proposition that since the fact-finding process, i. e., the right to counsel, in the present case was not impugned, the use of the allegedly void convictions for impeachment purposes did not constitute error. We are buttressed in this belief by *United States v. Penta*, 475 F.2d 92 (1st Cir. 1973).

In *Penta*, the defendant-appellant appealed from an order denying his motion for a

new trial based on subsequent reversal of prior state court convictions which had been used in the federal trial to impeach his credibility. The First Circuit held that a conviction which may have been influenced by use, for general impeachment purposes, of prior convictions, which have been subsequently overturned on constitutional grounds relating to an illegal search or seizure, may properly stand.[7] More specifically, the court concluded, *inter alia* :

We agree that the use of evidence obtained from an unlawful search and seizure has a definite influence on the fact-finding process, but in a very different way from deprivation of counsel. Such evidence tends to make the resulting conviction more, not less trustworthy. There is no lack of reliability as there was in *Loper*.

475 F.2d at 94.

Again, we note a reluctance to extend *Loper* into other areas of alleged constitutional deprivations. *See Tisnado v. United States*, 547 F.2d 452, 457, n. 4 (9th Cir. 1976); *Douglas v. Warden, supra*. With this reluctance for such an extension we agree.

Having determined that no error was committed, we are not required to address the harmless error issue. We note that while it must have been clear to the jury that the setting of the crime was a penitentiary, under the circumstances we do not feel constrained to discuss Judge Murray's view that "there is no reasonable possibility that the evidence complained of might have contributed to the conviction, and the constitutional error, beyond a reasonable doubt, did not contribute to the verdict."[8]

## III

### Sentencing

■ In *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), a federal district judge, in imposing a sen-

---

7. We emphasize that in this case the prior convictions were offered for general impeachment purposes, and our holding in this case should be so construed. *See United States v. Penta*, 475 F.2d at 94–95.

8. App. at 10.

tence, gave explicit consideration to the defendant's record of previous convictions. It was later conclusively determined that two of the previous convictions were constitutionally invalid, having been obtained in violation of *Gideon v. Wainwright, supra.* The Supreme Court held that under these circumstances the Court of Appeals for the Ninth Circuit was correct in remanding the case to the district court for reconsideration of the sentence imposed upon the defendant.

This court in *Brown v. United States,* 483 F.2d 116 (4th Cir. 1973), adopted a two-step procedure to implement *Tucker.* This procedure was discussed in *Stepheney v. United States,* 516 F.2d 7 (4th Cir. 1975), as follows:

> Under *Brown,* the district judge should first consider whether the sentence was appropriate, discounting the prior convictions. If not, he must reach the second question whether the prior convictions have been invalidated. In *Brown* the court found it necessary "to remand the proceeding to the District Court in order that it might review the record to determine whether, assuming the invalidity of the three state convictions in question, its sentence would be the same."

483 F.2d at 118, as cited in 516 F.2d at 8.

Appellant argues that the trial judge was not only familiar with his 1970 convictions at the time of sentencing, but was also of the view that those convictions were legal. Under these circumstances, appellant claims the district court erred in not applying the *Brown* test.[9]

Appellee contends *Tucker* is inapplicable to the facts of this case, in that in the instant case the record fails to show that the sentencing judge gave explicit consideration to the prior convictions.

9. After pointing out that appellant's prior record was known to the trial judge at the time of sentencing, the district court reasoned that "as the 'harmless error' test applies to the verdict obtained, the use of petitioner's record at time of sentencing is not of concern. The question is whether the record might have contributed to the conviction." App. at 9.

10. § 2245. *Certificate of trial judge admissible in evidence*

We feel the answer to this issue lies in a recent decision of this court. In *Strader v. Troy,* 571 F.2d 1263 (4th Cir. 1978), we held, *inter alia,* that a certificate filed by a state trial judge pursuant to 28 U.S.C. § 2245 [10] failed to establish that a sentence was not imposed in contravention of *United States v. Tucker, supra.* Prior invalid misdemeanor convictions were involved. We reported at 1266 of the opinion:

> Before the North Carolina district court decided the instant case, the trial judge who sentenced Strader upon his conviction for second degree murder filed a certificate pursuant to 28 U.S.C. § 2245. This certificate stated that before imposing sentence, he received and was familiar with the contents of the F.B.I. report citing Strader's allegedly uncounseled Virginia convictions but that "regardless of the F.B.I. report, a lesser sentence would not have been imposed and to send [Strader] back for resentencing would result in the same sentence . . . and . . . would serve no useful purpose. . . ." There was an additional certification that the judge "feels there would not have been a lesser sentence [had the judge] been unaware of the prior convictions or had assumed their invalidity."

The certificate was found to be ambiguous.

We took the opportunity in *Strader* to restate the requirements of *Stepheney, supra,* which refined the *Brown* test. "In order to comply with *Stepheney,* the [sentencing] judge must be able to say without qualification that the sentence was uninfluenced by the allegedly invalid prior convictions." 571 F.2d at 1267.

We are of the opinion that any such evidence in this case of Judge Liss' intent is

> On the hearing of an application of a writ of habeas corpus to inquire into the legality of the detention of a person pursuant to a judgment the certificate of the judge who presided at the trial resulting in the judgment, setting forth the facts occurring at the trial, shall be admissible in evidence. Copies of the certificate shall be filed with the court in which the application is pending and in the court in which the trial took place.

equivocal. We note that our resolution of this issue is guided by our disinclination to disturb Judge Murray's order of June 9, 1976, holding, *inter alia*, Grandison's convictions of February 24, 1970 void as there was no appeal in that case. We therefore remand in order to afford Judge Liss the opportunity to furnish the district court a certificate which will meet the *Stepheney-Strader* requirements or to otherwise resentence the appellant.

AFFIRMED IN PART, AND REMANDED IN PART.