66 F.3d 317
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ernest BRYAN, a/k/a Ernest Miller, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ernest BRYAN, a/k/a Ernest Miller, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ernest BRYAN, a/k/a Ernest Miller, Defendant-Appellant.
 Nos. 94-5086, 94-5544, 94-5961.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 4, 1995.
Decided: Sept. 18, 1995.
 
 ARGUED: Michael Patrick O'Connell, Assistant Federal Public Defender, Charleston, SC, for appellant. Albert Peter Shahid, Jr., Assistant United States Attorney, Charleston, SC, for appellee. ON BRIEF: J. Preston Strom, Jr., United States Attorney, Charleston, SC, for appellee.
 Before WILKINSON and WILLIAMS, Circuit Judges, and HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Ernest Bryan was convicted on March 24, 1992, on two counts: 1) possessing a firearm after having previously been convicted of a crime punishable by imprisonment exceeding one year, in violation of 18 U.S.C. Sec. 922(g) (1988); and, 2) using or carrying a firearm during and in relation to possession with intent to distribute crack cocaine, in violation of 18 U.S.C. Sec. 924(c) (1988). Following his conviction, Bryan filed three motions for new trial which were denied.[1] Bryan appeals, alleging that because evidence of his guilty pleas in related state court proceedings was used by the Government during its case in chief to prove elements of both counts of conviction, as well as to impeach his testimony, the district court abused its discretion in denying his Rule 33 motions for a new trial. For the following reasons, we affirm the district court.
 
 I.
 
 2
 The testimony adduced during the Government's case reflects that on October 17, 1990, following a traffic stop for speeding and the arrest of the driver, Roger Jones, for operation of a vehicle under a suspended license, Patrolmen Kenneth Lancaster and Jefferson Bannister, Jr., discovered marijuana in the ashtray of the vehicle. After Bryan, a passenger, admitted to Patrolman Lancaster that the marijuana in the ashtray belonged to him, Lancaster placed Bryan under arrest. During the course of the arrest in which Bryan was informed of his Miranda rights, Lancaster asked whether Bryan possessed any firearms. Bryan admitted that he did, at which point Lancaster located in Bryan's left pants leg an Amadeo Rossi, SA, .38 caliber revolver and an Armi Tanfoglie Giuseppe, .25 caliber pistol. After retrieving the two firearms, Lancaster thoroughly searched Bryan and located in his underwear (a diaper)[2] thirty rocks of crack cocaine packaged in three plastic bags, each containing 10 rocks of crack. When Lancaster asked Bryan why he "had guns on him," Bryan responded, "if you had been shot before, you would carry a gun also." (J.A. 20). In addition, Lancaster testified to having related the same facts at state court proceedings wherein Bryan had pleaded guilty to the state charges arising from these events.
 
 
 3
 During the defendant's case, however, Bryan testified on direct examination that he did not knowingly have possession or control over the drugs or firearms allegedly found on his body on October 17, 1990. Rather, Bryan testified that although he had seen the firearms when the driver of the car, Roderick Jones, brought them to his house, he only saw them for the first time during the search when the Patrolmen found them between the two front bucket seats. Bryan further testified that he was told by the "highway patrolman" that the crack cocaine was found in his diaper between his legs. (J.A. 91). He nevertheless denied that the crack cocaine was knowingly in his possession when it was found. Bryan testified that the numbness resulting from the paralysis caused by the three gunshot wounds to his back prevented him from having any feeling below his chest.
 
 
 4
 Bryan further testified, as to his state court guilty plea, that he thought he was pleading guilty to one indictment charging him with selling crack cocaine in November 1989. He elaborated that he pleaded guilty to that charge because he had been told that failure to do so would lead to his continued incarceration pending trial.
 
 
 5
 During cross-examination, the Government impeached Bryan's testimony by extensively referencing the state charges to which Bryan had pleaded guilty in January 1991. In particular, the Government asked Bryan whether the signatures on the indictments attesting to his guilty plea to the drug offenses on October 17, 1990, were his and whether he now was testifying that he was not guilty of those offenses. The Government further asked Bryan whether he had affirmatively responded to the state trial judge that he was guilty of the five charges and that his guilty plea was freely and voluntarily made.
 
 
 6
 Following Bryan's conviction and sentencing hearing, the court by judgment order entered on January 19, 1994, calculated a total offense level of 22 and criminal history category III. The district court sentenced Bryan at the lower end of the imprisonment range, 111 months incarceration at an appropriate medical facility.
 
 
 7
 On July 13, 1992, however, Bryan's state convictions arising from the October 17, 1990 arrest were vacated by order of South Carolina Circuit Court Judge Ellis B. Drew. In its order granting Bryan a new trial, the state court concluded:
 
 
 8
 Bryan did not have the requisite physical and mental competency to stand trial or to enter a guilty plea. When a Defendant's mental facilities are so impaired that he is incapable of a full understanding and appreciation of the charges, and of comprehending his constitutional rights and realizing the consequences of his plea, or participating in the defense of his case, a guilty plea entered under such circumstances is invalid. Additionally, it is this Court's conclusion that the guilty plea was not made voluntarily. Given the physical condition of the Defendant, and the fact that under any circumstances, whether Mr. Bryan was found innocent or guilty of the charges he was to proceed to trial on January 9, 1991, that he would be returned to the Beaufort County Jail. Under the testimony of all parties at the Jail, he was receiving inadequate care. It is clear that this Court cannot find that the guilty plea was made voluntarily under such circumstances.
 
 
 9
 (J.A. 174) (citations omitted).[3] We note that the state court did not vacate Bryan's convictions because of any incapacity Bryan suffered during the arrest for the crimes charged. Rather, the defect in his conviction was due purely to the impairment of his mental faculties at the time he pleaded guilty to the state charges. Given this subsequent finding by the state court, Bryan contends that the district court erred in denying his Rule 33 motions for a new trial based on after-discovered evidence.
 
 II.
 
 10
 In this appeal, we confront the sole issue whether the district court abused its discretion in refusing to grant Bryan's Rule 33 motions for a new trial following the state court order vacating Bryan's conviction and granting a new trial on his state drug charges. See United States v. Arrington, 757 F.2d 1484, 1486 (4th Cir.1985) (reviewing denial of a motion for a new trial for abuse of discretion). Bryan asserts that the Government improperly used evidence of his guilty pleas to the state charges during its case-in-chief to prove elements of the federal counts and to impeach his testimony. Thus, Bryan argues that reversal of his state convictions constitutes newly-discovered evidence upon which the district court should have granted him a new trial. The Government responds to Bryan's newly-discovered evidence argument by asserting that this new evidence did not satisfy the five-prong test for granting a new trial under United States v. Christy, 3 F.3d 765 (4th Cir.1993).
 
 
 11
 Under Christy, motions for a new trial based upon newly-discovered evidence are reviewed pursuant to the following standard:
 
 
 12
 (i) is the evidence, in fact, newly discovered; (ii) are facts alleged from which the court may infer due diligence on the part of the movant; (iii) is the evidence relied upon not merely cumulative or impeaching; (iv) is the evidence material to the issues involved; and (v) would the evidence probably result in acquittal at a new trial?
 
 
 13
 Id. at 768 (quoting United States v. Chavis, 880 F.2d 788, 793 (4th Cir.1989)). Bryan "must satisfy all five prongs of the test in order to receive a new trial." Id. Bryan primarily argues that absent the references at trial to his state court guilty plea, he would probably have been acquitted of the Sec. 924(c)(1) charge at a new trial.
 
 
 14
 Notwithstanding the analytical posture under which Bryan and the Government have debated this case before us, it could be argued that Loper v. Beto, 405 U.S. 473 (1972), provides a better framework than Christy to review the unusual facts surrounding Bryan's appeal. In Loper, the Supreme Court extended its decision in Burgett v. Texas, 389 U.S. 109 (1967), which prohibited the use of uncounselled prior convictions to prove the elements of another offense, to also prevent the use of such prior convictions to impeach a criminal defendant in a subsequent trial. Loper, 405 U.S. at 481-83; see also Grandison v. Warden, Maryland House of Correction, 580 F.2d 1231, 1238-39 (4th Cir.1978) (discussing Loper and its predecessor, Burgett ), cert. denied, 440 U.S. 918 (1979). Courts have subsequently interpreted Loper to apply only to prior convictions invalidated on constitutional grounds affecting the integrity of the fact-finding process. Cf. United States v. Lauga, 726 F.2d 1032, 1034 (5th Cir.1984) ("We have never extended [the Loper ] rule ... to prior convictions that may be invalid or unreliable for nonconstitutional reasons."); Grandison, 580 F.2d at 1239 (finding no Loper error where the prior conviction was invalidated on statutory equal protection grounds because the error in the prior conviction did not "impugn[ ] the integrity of the fact-finding process"). If a Loper violation occurs, however, we can still affirm the conviction if the error was harmless beyond a reasonable doubt. See Loper, 405 U.S. at 485 (White, J., concurring in the result); Prophet v. Duckworth, 580 F.2d 926, 927 (7th Cir.1978) (applying harmless error analysis to Loper violation), cert. denied, 440 U.S. 923 (1979). Therefore, assuming for the sake of argument that a Loper violation occurred, if the use of Bryan's subsequently voided state court guilty pleas is harmless beyond a reasonable doubt, we may affirm.[4] We conclude that it is.
 
 
 15
 The evidence in this case clearly shows Bryan's guilt on both counts, even excluding the testimony concerning the tainted pleas. As we stated earlier, Officer Lancaster testified at trial that Bryan admitted to ownership of the marijuana. Furthermore, Lancaster testified that during the arrest for simple marijuana possession, Bryan volunteered that he had hidden the two guns in his pants. When asked his reason for possessing the guns, Bryan responded, "if you had been shot before you would carry a gun also." (J.A. 20). In fact, according to the testimony of both officers, Bryan attempted to reach into his pants to retrieve the guns as he was responding to Lancaster's question. Additionally, Officer Lancaster testified that he found thirty rocks of crack cocaine, packaged in three small bags each containing ten rocks, within Bryan's diaper.[5] At the close of his direct examination, Lancaster indicated that "all [Bryan] would state to me is what I told you before ... that we had him this time and that he had never been caught with guns and drugs on him at the same time." (J.A. 22). Officer Lancaster and Officer Bannister each testified that he had made numerous narcotics arrests. Based on this expertise, Officer Bannister also testified without objection that even though hidden, the three bags of crack cocaine "were found in a position where they would easily be able to be sold." (J.A. 51). Officer Lancaster also came to this conclusion. Additionally, we must be skeptical of Bryan's assertion that he was unaware that the drugs were in his diaper. Bryan had no disability obscuring his vision, and he possessed the full range of upper body motion; to argue that he was unaware that someone placed thirty rocks of crack cocaine in the most intimate of areas strains credulity. Based on this evidence, we believe that "because of the overwhelming nature of the evidence against [Bryan], the jury could not have reasonably reached a different verdict even if the prior conviction were not used." Prophet, 580 F.2d at 927; see also United States v. Camacho, 955 F.2d 950, 955 (4th Cir.1992). Thus, we find no abuse of discretion in the district court's denial of Bryan's Rule 33 motion.
 
 III.
 
 16
 For the reasons stated herein, we affirm Bryan's convictions.
 
 AFFIRMED
 HEANEY, Senior Circuit Judge, dissenting:
 
 17
 I respectfully dissent. As the majority appears to accept, I believe this case to be controlled by United States v. Loper, 405 U.S. 473 (1972), rather than by United States v. Christy, 3 F.3d 765 (4th Cir.1993), because the integrity and reliability of the fact-finding process have been challenged on constitutional grounds. Because Bryan's convictions cannot withstand the exacting test of harmless error review, I would vacate his convictions and require that the prosecution prove its case in a new trial free from the taint of an unconstitutional prior conviction.
 
 I.
 
 18
 As the majority suggests, the parties have analyzed Bryan's claims under the wrong line of cases. While the majority assumes for the sake of argument that a Loper violation has occurred, I believe that the law clearly dictates such a conclusion. At its core, Bryan's claim is not one of newly discovered evidence; rather, he asserts that the prosecution's use of a constitutionally void prior conviction to impeach his credibility before the jury deprived him of due process of law in violation of the Fourteenth Amendment.
 
 
 19
 Bryan's situation thus is quite distinct from that in cases like Christy, 3 F.3d at 768, United States v. Chavis, 880 F.2d 788, 793 (4th Cir.1989), and United States v. Bales, 813 F.2d 1289, 1295 (4th Cir.1987). In those cases, postconviction counsel approached the court with what was claimed to be probative evidence which, if presented to the jury, would have tipped the scale in favor of acquittal. Counsel said, in effect: "Here is evidence which could not reasonably have been discovered prior to trial and which demonstrates that my client should not have been convicted." Accordingly, in determining whether to order a new trial on the basis of newly discovered evidence, this court's five-part test quite properly includes a requirement of due diligence by trial counsel and a probabilistic prediction as to whether the new evidence would have generated reasonable doubt in the minds of the jurors.
 
 
 20
 This line of analysis, however, is plainly inapplicable to cases in which the prosecution builds its case on a prior conviction that turns out to be legally void under the Constitution. Unlike the claims advanced in cases like Christy, Chavis, and Bales, Bryan's appeal rests on a subsequent ruling that calls into question the integrity and reliability of the fact-finding process below, due to the newly-found lack of integrity and reliability in the prior state court proceeding. What is "new" about Bryan's case, then, is not "evidence," but the stain of unconstitutionality which the South Carolina court has placed on Bryan's state court guilty plea, a key element of the prosecution's case. The constitutional dimension of Bryan's claim removes it from the ambit of Christy and mandates the more demanding scrutiny set forth by the Supreme Court in Loper.
 
 
 21
 In Loper, a majority of the Court held that the use of a constitutionally invalid prior conviction to impeach a defendant required reversal unless the use constituted harmless error.[1] 405 U.S. at 482 n. 11, 483. The specific constitutional violation at issue in Loper was the defendant's prior conviction without counsel in violation of Gideon v. Wainwright, 372 U.S. 335 (1965). The Court's holding certainly embraces the situation confronting us, where a conviction was obtained by means of an involuntary guilty plea in violation of the Fourteenth Amendment. Answering in the affirmative, the Court framed the question before it broadly: "Does the use of prior, void convictions for impeachment purposes deprive a criminal defendant of due process of law where their use might well have influenced the outcome of the case?" 405 U.S. at 480.
 
 
 22
 In this context, it is impossible to draw any principled distinction between convictions obtained in violation of the Sixth Amendment right to counsel and those obtained in violation of the Due Process Clause's prohibition against involuntary guilty pleas. It is true that violations of certain constitutional rights have been held not to require reversal under Loper. In Grandison v. Warden, Maryland House of Correction, 580 F.2d 1231 (4th Cir.1978), this court made clear that the test for falling within the domain of Loper is whether the constitutional error in question "impugn[s]" the integrity of the fact-finding process. Id. at 1241. In other words, Loper concerns itself with the kind of constitutional errors that will lead a reasonable observer to cast doubt on the outcome of the earlier trial. Conversely, courts have held that Loper does not extend to violations of, for example, the Fourth Amendment exclusionary rule and other prophylactic constitutional rules designed to deter police misconduct rather than to ensure the reliability of the resulting determination of factual guilt or innocence. See United States v. Penta, 475 F.2d 92 (1st Cir.1973) (prior conviction voided due to unconstitutional search and seizure); Grandison, 580 F.2d at 1241, (prior conviction voided because criminal statute violated Equal Protection Clause). The First Circuit employed a similar test in Penta, supra, holding that a conviction need not be reversed where the prosecution impeached the defendant with a prior conviction that was voided on Fourth Amendment grounds, because evidence obtained through an unconstitutional search and seizure "tends to make the resulting conviction more, not less trustworthy," and generates "no lack of reliability as there was in Loper." Id. at 94. By contrast, it is difficult to imagine a more unreliable conviction than one resulting from an involuntary guilty plea. When a guilty plea is thrown out because it was not voluntarily made, the integrity of the fact-finding process has been totally undermined. Thus, Bryan's claim must be analyzed under Loper, and not under Christy. Reversal is required unless the error was harmless beyond a reasonable doubt. See Loper, 405 U.S. at 483 n. 12; Arizona v. Fulminante, 499 U.S. 279, 310 (1991) ("When reviewing the erroneous admission of an involuntary confession, the appellate court, as it does with the admission of other forms of improperly admitted evidence, simply reviews the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt.").
 
 II.
 
 23
 On the facts before us, the use of Bryan's constitutionally void state court guilty plea for impeachment purposes did not constitute harmless error beyond a reasonable doubt. Bryan's state court guilty pleas were introduced in the government's case-in-chief through the testimony of Patrolman Lancaster, were raised repeatedly on its cross-examination of Bryan, and were emphasized in its closing argument to the jury. The guilty pleas formed the centerpiece of the prosecution's efforts to attack Bryan's credibility and to ridicule his assertion that the pleas were involuntary.[2] Against this background, a conclusion that the use of the involuntary guilty pleas constituted harmless error would follow only if the remainder of the evidence against Bryan conclusively established his guilt beyond a reasonable doubt. On the record before us, no such conclusion can be drawn. As to Count II, charging Bryan with possession of a firearm in violation of 18 U.S.C. # 8E8E # 922(g) and 924(a)(2), I cannot say with the requisite certainty that the remainder of the evidence established beyond a reasonable doubt that Bryan knowingly "possess[ed]" the weapons alleged to have been found on his person. See 18 U.S.C. Sec. 922(g). Bryan testified that the police officers found the guns between the bucket seats and that he had never before seen them. Patrolman Lancaster testified that he found the guns underneath Bryan's pants leg. Thus, absent additional physical or documentary evidence, Bryan's guilt or innocence turns on a credibility determination. In light of the manner in which the guilty pleas were used to impeach Bryan's credibility, I am left with no alternative but to conclude that the admission of the guilty pleas was not harmless beyond a reasonable doubt as to Count II.
 
 
 24
 The correct result as to Count III, charging Bryan with possession of the firearms during and in relation to possession of crack cocaine with intent to distribute, is even clearer. Outside the guilty pleas, the only evidence introduced by the government to prove its assertion that Bryan had the requisite intent was the testimony of Patrolman Lancaster that, based on his prior experience, the bags of crack appeared to be packaged for resale. Bryan testified that he was paralyzed and could feel nothing from the mid-chest down, that he was confined to a wheelchair, and that a lack of bladder control required that he wear a diaper at all times. Because of his condition, Bryan testified, he was not aware that the driver of the automobile, Roderick Jones, had planted the drugs on him for transportation to some later transaction. Again, Bryan's guilt or innocence boils down to an assessment of credibility. Because the prosecution aggressively wielded the guilty pleas to impeach Bryan's credibility, I cannot say that their use was harmless beyond a reasonable doubt.
 
 
 25
 Accordingly, I would reverse Bryan's convictions and order that he be granted a new trial untainted by the introduction of his involuntary and unconstitutional prior state court guilty pleas.
 
 
 
 [1]
 Bryan first moved for a new trial, asserting that his testimony on cross examination was improperly impeached by the prosecution's use of state court convictions subsequently overturned in state post conviction proceedings. The district court denied Bryan's motion by written order filed March 1, 1993. In its memorandum opinion, the court concluded that the use for impeachment purposes of Bryan's convictions which were later overturned did not justify a new trial. After his sentencing in January 1994, Bryan filed a second motion for a new trial in which he put forward the same arguments. Unconvinced that the absence of the evidence of Bryan's state court guilty plea as a tool for impeachment would result in acquittal at a new trial, the district court again denied Bryan's request. Finally, Bryan sought reconsideration of the district court's second order under the additional grounds that the government would not have survived a Rule 29 Motion for Acquittal. The court by memorandum opinion reaffirmed its previous order, and concluded that in light of the strength of other evidence against Bryan, the absence of any evidence of his plea would "under no circumstances ... probably result in acquittal at a new trial." (J.A. 189)
 
 
 [2]
 Bryan had been shot in the back in 1990 and suffered a spinal cord injury causing permanent leg paralysis and incontinence, thus requiring him to wear a diaper
 
 
 [3]
 The State did not appeal this ruling nor has it sought to re-try Bryan
 
 
 [4]
 Similarly, if the admission of this evidence is harmless beyond a reasonable doubt, Bryan's Christy argument also must fail. Under Christy, we must ask whether the jury probably would not have convicted Bryan had they known that his guilty pleas were constitutionally invalid. Although framed somewhat differently, Loper 's harmless error inquiry and Christy 's fifth prong ask the same question; however, Loper imposes a much more exacting standard. As a result, if the alleged error is harmless "beyond a reasonable doubt" under Loper, then we certainly have to conclude that the jury would not "probably" have found otherwise if the additional evidence had been admitted
 
 
 [5]
 Although Bannister did not testify to the same degree of specificity as to the exact amount of the crack cocaine, at trial he identified the three packages of cocaine as the same ones seized by Lancaster during his search of Bryan
 
 
 [1]
 Justice Stewart delivered the judgment of the Court and an opinion joined by Justice Douglas, Justice Brennan, and Justice Marshall. Justice White wrote a concurring opinion, in which he expressed agreement with the central holding of Justice Stewart's opinion, but emphasized his view that the case should have been remanded to permit the district court to make the necessary factual findings in the first instance. He stated that the court of appeals erred in holding that "the use of invalid prior convictions to impeach a defendant in a criminal case does not raise an issue of constitutional proportions even though so using those convictions might well have influenced the outcome of the case." 405 U.S. at 865 (White, J., concurring). That a majority of the court endorsed the application of harmless error review to the use of constitutionally invalid convictions for impeachment is demonstrated by Justice White's comment that "I do not understand our prior decisions to hold that there is no room in cases such as this for a finding of harmless error...." Id
 
 
 [2]
 It is important to emphasize that the South Carolina court did not find Bryan's prior conviction to be involuntary on the basis of some legal technicality. Rather, the court determined that Bryan's debilitated physical condition at the time of his plea hearing caused him to enter a plea of guilty only because he believed at the time that a plea of not guilty would cause him to be returned to the Beaufort County Jail, where the medical facilities had proven woefully inadequate to treat his multiple conditions. If he entered guilty pleas, Bryan believed, he would be transferred to a state correctional institute where adequate medical care would be available. At the time he made his pleas, Bryan suffered from paralysis below the chest, extreme anemia, severely infected ulcers, fever, dizziness, pain, emaciation and fatigue
 In that state, Bryan's fear of returning to the Beaufort County Jail was well founded. When he first arrived at the jail, the director of the facility refused to admit him on account of his numerous medical conditions, which the director felt could not properly be attended there. As several jail officials later admitted, the Beaufort County Jail could not adequately care for Bryan's medical problems while he was awaiting trial. Among other reasons, the jail's sole trained medical staffer was on duty only eight hours a day, and the untrained staff were simply not capable of properly monitoring his condition, changing his bandages and so forth.
 Moreover, Judge Ellis B. Drew noted in his order granting a new trial that "when the guilty plea was entered before the Trial Judge, there were reservations expressed by Mr. Bryan as to whether he was guilty or not, and it was necessary to take the guilty plea, a second time." Bryan v. State of South Carolina, 91-CP-07989, slip op. at 7 (July 13, 1992); JA 173. Under such unusual circumstances, Bryan's pleas were properly found to be factually and constitutionally involuntary. Judge Drew voided the pleas and ordered a new trial only after hearing the testimony of the Director of the Beaufort County Jail, the emergency medical technician for the Beaufort County Jail, Bryan's attending physician at the Lieber Correctional Institute, his public defender, the police officer responsible for transporting Bryan to and from the jail, Bryan's wife, and Bryan himself. As the majority opinion notes, the State has neither appealed Judge Drew's ruling nor attempted to re-try Bryan.